HEARD NOVEMBER TERM, 1877.

*Ex parte* DAVIS, *in re* WALKER *vs.* AUXILIARY JOINT STOCK COMPANY.

A mechanic's lien upon a "building or structure and upon the interest of the owner thereof in the lot of land upon which the same is situated:" *Held*, To include several adjoining lots enclosed by a common fence and used and controlled by the owner of the building for one common and avowed purpose, though as to some he was not the absolute owner.

BEFORE KERSHAW, J., AT COLUMBIA, AUGUST, 1877.

The facts of the case are fully set forth in the opinion of the Court.

*Bachman & Youmans*, for appellant.

*Clark*, contra.

February 1, 1878. The opinion of the Court was delivered by

HASKELL, A. J. In an action brought by G. M. Walker, trustee, against the Auxiliary Joint Stock Company, to foreclose a mortgage on land, George W. Davis comes in and sets up his claim to a prior lien on said land by virtue of the provisions of Section 7, Chapter CXX, Revised Statutes, p. 550. It seems that the respondent, Davis, had erected buildings for the appellant on the land involved prior to the execution of the mortgage to Walker, and had duly filed the statement of his account in the office of the Clerk of the Court of Common Pleas, as is required by law. About that there is no dispute.

The question is as to the land to which this "mechanic's lien" attaches, and does it in this case attach to a certain tract which will hereafter be more particularly described?

The determination of the respective rights of the mortgagee and the contractor in this case depends upon the construction given to the words of the statute, viz.: The builder "shall have a lien upon such building or structure, *and* upon the interest of the owner thereof *in the lot of land upon which the same is situated.*"—§ 7, Chap. CXX, Rev. Stat., p. 550. It appears by a plat exhibited in the case that the buildings erected by the contractor, George W. Davis, were a "grand stand" for spectators and a "judges' stand," on a race course then in the possession of the appellant. That there

were four tracts of land parallel to each other and contiguous, their lines running North and South, of which three, Nos. 2, 3 and 4, constituted the race course, while No. 1 was known as the Fair Grounds, No. 1 being the Westerly, No. 4 the Easterly of the four ; that the building for spectators, called the " grand stand," was situated on tract No. 1, at its Eastern border ; that the "judges' stand" was on tract No. 2, near its Western border and opposite the center of the " grand stand," and that the race track was between these two stands—ran round, passing over and comprehending the greater part of tracts 2, 3 and 4 ; that these three tracts (2, 3 and 4) were enclosed by one fence, and that the nearer side of the track was also marked by a common fence.   The appellant, for whom the buildings were erected was in possession and control of all four tracts, but held an absolute title to only one of them—tract No. 3.   Neither of the buildings was upon tract No. 3, and it is contended by the appellant that this tract No. 3 has been improperly held to be a part of the lot " of land on which the buildings are situated."

The word " lot," in its most comprehensive sense, might include the whole tract of land upon which any buildings might be situated, without regard to the dimensions of the tract or the nature of the building ; for example, a kitchen or other out-door building upon a large plantation.

In its most limited sense, the word might be confined to the area actually covered by the building ; as the land beneath a residence but without means of approach.

In the latter the security intended by the statute would be deprived of all value, while in the former the law would be unreasonable and oppressive.   When a word has various significations and its meaning in a statute comes in question, that which is most reasonable is adopted by the Court as the sense in which it was used by the law-makers, and that certainty is most reasonable which accords at once with established principles of law and the manifest intention of the Legislature.

It is safe to say that the extent of land to which the mechanic's lien attaches cannot be less than the land which would pass by a grant of "the buildings and the lot of land on which the same are situated."   When that rule of measurement has been ascertained, it will be regarded as governing the cases arising under this statutory lien.

When a house or building is the principal thing in a grant and land is not named, does any land go with the house? and if land is named but not described with particularity, how is it to be measured? It is a maxim, " *Cincunque aliquid conceditur, conceditur etiam et id sine quo, res ipsa non esse potuit.*"

" When anything is granted, all the means to attain it and all the fruits and effects are also granted, and will pass inclusive together with the thing itself."—Greenleaf's Cruise on Real Property, Vol. II, p. 265.

Or, under the grant of a thing everything passes which is part and parcel thereof.

The application of this principle to the proposition above submitted cannot be better done than by quoting the language of Mr. Justice Story in the case of *Whitney* vs. *Olney*, 3 Mason, 280. His recital of authorities is very full, and the points most urged by counsel in the present case are considered. He says :

" My opinion is that by the devise of the mill and its appurtenances all the land under the mill and necessary for the use of it and commonly used with it passed to the devisees. * * * I do not proceed upon the ground that the land was a mere appurtenance to the mill, but that it was parcel thereof.

" It is true that land cannot strictly be appurtenant to land so as to pass under the term appurtenances; * * * but where the intention is clearly expressed that land should pass under that name, the law will give effect to the grant, notwithstanding the misnomer. Thus, where it was averred in pleading that certain land was appurtenanced to a messuage, the Court held that, in point of law, it could not be appurtenant to the messuage, but that it was, nevertheless, well in a grant, because it shall be intended to mean such land as is usually occupied with the messuage, or lying with the messuage, and therefore a devise of a messuage *with the land* to the same appertaining is good to pass such lands as were usually occupied, used or lying with the messuage. Therefore, in *Boocher* vs. *Sanford*, (Cro. Eliz., 113,) it was held that lands usually occupied with a house, though at a distance from it, might well pass by a devise of it as a tenement with its appurtenances *in which H dwelleth in E.*

" In these cases the lands pass not as appurtenances, but as parcel of the granted or devised premises, upon the intention of the

parties collected from the instrument and explained by reference to the facts.

"But in the present case I lay no stress whatever upon the words in the devise 'with the appurtenances.' The land under the mill and adjacent thereto, so far as necessary to its use and commonly used with it, passed by force of the word 'mill.' * * A grant of a messuage conveys all the land within the curtilage thereof; so the grant of a house.—Shep. Touch., 94. * * * The good sense of the doctrine on this subject is that under the grant of a thing whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee. In common sense and in legal interpretation a mill does not mean merely the building in which the business is carried on, but includes the site, dam and other things annexed to the freehold necessary for its beneficial enjoyment."

Apply these principles.

The lien is a statutory mortgage, and is of the nature of a grant. All classes of buildings. are comprehended; the building is the principal thing in the grant, and is clearly defined in each case as it may arise; and in each case, according to the nature of the building and existing facts and circumstances, such portion of the land on which it is situated as may be "necessary and convenient for its reasonable use" goes with the building under the lien.

See also *The Bank of Charleston* vs. *Curtis*, (18 Conn. R., 348,) decided upon the principles of law in the case of *Frank* vs. *Branch*, (16 Conn. R., 259,) similar to the case of *Whitney* vs. *Olney*. In each case arising under the statutes there is a mortgage of the building and the land upon which it is situated, not upon which the foundation of the building stands, but the land not only on which the building rests but over which the purposes for which the building was avowedly erected extends and on which the usefulness of the building depends. In this case it is a mortgage on the grand stand and judges' stand on a race course. Certainly the land controlling the use of the water power had as well be taken from a mill as the land containing the race track be taken from the stands for the spectators and the judges.

No difficulty arises from the facts in this case if the law thus announced is sound. The several tracts, two, three and four, were bought, procured and held for a common and avowed purpose; they were together enclosed by a common fence; the track which passed

over the three was marked by a common fence on the inner side; they constituted one parcel adjacent to the main building and occupied by the smaller; they were used together for a special purpose, and the buildings were erected exclusively to aid in this purpose.

The entire lot containing the three tracts should properly be regarded, for the purposes of the statute, as the lot of land on which the buildings were situated.

The judgment of the Circuit Court is confirmed and the appeal dismissed.

*Willard*, C. J., and *McIver*, A. J., concurred.